2023 PA Super 164

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY JOHN BARTIC | : | |
| | : | |
| Appellant | : | No. 32 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 19, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-MD-0004351-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY BARTIC | : | |
| | : | |
| Appellant | : | No. 33 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 19, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-MD-0003877-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY BARTIC | : | |
| | : | |
| Appellant | : | No. 34 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 19, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-MD-0004352-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |

|  |  |  |
|---|---|---|
| v. | : | |
| | : | |
| | : | |
| | : | |
| TIMOTHY BARTIC | : | |
| | : | |
| Appellant | : | No. 35 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 19, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-MD-0001798-2021

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY JOHN BARTIC | : | |
| | : | |
| Appellant | : | No. 36 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 19, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-MD-0003875-2021

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY BARTIC | : | |
| | : | |
| Appellant | : | No. 37 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 19, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-MD-0003876-2021

BEFORE: LAZARUS, J., OLSON, J., and KING, J.

OPINION BY OLSON, J.: **FILED: September 12, 2023**

J-S17022-23

In this consolidated appeal,[1] Appellant, Timothy Bartic, appeals from the November 19, 2021 judgments of sentences entered in the Court of Common Pleas of Allegheny County that imposed an aggregate sentence of 1 to 2 years' incarceration, to be followed by 1 year of probation, after the trial court found Appellant guilty of six instances of indirect criminal contempt.[2]  Appellant's

_____

[1] Appellant filed a separate notice of appeal at each trial court docket in compliance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and its progeny, as well as Pennsylvania Rule of Appellate Procedure 341.  **See** Pa.R.A.P. 341 *Comment*.

On February 8, 2022, this Court, in a *per curiam* order, consolidated Appellant's six appeals *sua sponte*.

[2] 23 Pa.C.S.A. § 6114.

At trial court dockets CP-02-MD-1798-2021 ("CP-1798"), CP-02-MD-3875-2021 ("CP-3875"), CP-02-MD-3876-2021 ("CP-3876"), and CP-02-MD-3877-2021 ("CP-3877"), the trial court imposed an individual sentence at each docket of 3 to 6 months' incarceration.  The sentence at CP-3877 was set to run consecutively to the sentence at CP-3876.  The sentence at CP-3876 was set to run consecutively to the sentence at CP-3875.  The sentence at CP-3875 was set to run consecutively to the sentence at CP-1798.  At CP-1798, the trial court awarded Appellant a credit of 9 days (May 5, 2021 to May 13, 2021) for time served.  At CP-3876, the trial court awarded Appellant a credit of 21 days (July 1, 2021 to July 21, 2021) for time served.  At CP-3877, the trial court awarded Appellant a credit of 27 days (September 12, 2021 to October 8, 2021) for time served.

At trial court dockets CP-02-MD-4351-2021 ("CP-4351") and CP-02-MD-4352-2021 ("CP-4352"), the trial court imposed an individual sentence at each docket of 6 months' probation.  The sentence at CP-4352 was set to run consecutively to the sentence at CP-4351.  **See** N.T., 11/19/21, at 29.  The term of probation imposed at CP-4351 was set to run consecutively to the term of incarceration imposed at CP-3877.

indirect criminal contempt convictions stemmed from his violation of a final protection from abuse ("PFA") order issued pursuant to the Protection from Abuse Act ("PFAA"), 23 Pa.C.S.A. §§ 6101 to 6122, on six separate occasions. We affirm Appellant's judgments of sentence but remand this case to allow the trial court to correct a clerical error in the sentencing order at CP-4352 in accordance with this opinion.

"A final [PFA] order was issued against [Appellant] on November 12, 2020[,] in which he was prohibited from having contact with [the victim] and specifically precluded [] from her residence." Trial Court Opinion, 10/28/22,

_____

We note that the sentencing order at CP-4352 states that the term of probation (6 months) was set to run concurrently to the term of probation imposed at CP-4351. A review of the notes of testimony from the sentencing hearing reveals that the trial court ordered that the term of probation at CP-4352 was to run consecutively to the term of probation imposed at CP-4351. N.T., 11/19/21, at 29 (stating, "[a]t the last two violations [(CP-4352 and CP-4351)], we're going to place you on a period of probation of six months, they will run consecutive[ly] to each other and consecutive[ly] with the periods of incarceration"). In situations where the written sentencing order differs from the sentence orally announced by the trial court at the time of sentencing, this Court has held that a written sentencing order which differs from the "trial court's intentions [that] are clearly and unambiguously declared during the sentencing hearing [demonstrates] a 'clear clerical error' on the face of the record[ and is] subject to later correction." *Commonwealth v. Borrin*, 12 A.3d 466, 473 (Pa. Super. 2011); *see also Commonwealth v. Kremer*, 206 A.3d 543, 548 (Pa. Super. 2019) (stating, "the signed, written sentencing order controls, where the sentencing transcript is ambiguous; the ambiguity in the transcript must be resolved by reference to the signed, written sentencing order" (citation omitted)). Here, the trial court at the sentencing hearing clearly and unambiguously declared that it intended the two terms of probation to run consecutively. As such, the written sentencing order at CP-4352 contains a "clear clerical error." In light of our disposition herein, a remand to correct this clear clerical error is necessary.

at 1.  Appellant violated the PFA order on November 25, 2020 (CP-3875), May 4, 2021 (CP-1798), June 30, 2021 (CP-3876), September 1, 2021 (CP-3877), October 12, 2021 (CP-4352), and October 13, 2021 (CP-4351).[3]  On November 19, 2021, the trial court found Appellant guilty of six instances of indirect criminal contempt for violating the PFA order on the aforementioned dates.  That same day, the trial court sentenced Appellant as detailed *supra*. On November 29, 2021, Appellant filed a post-sentence motion, requesting

_____

[3] The trial court summarized the incidents in which Appellant violated the PFA order as follows:

> [O]n November 25, 2020, [Appellant] enter[ed the protected victim's] residence, the police were notified[,] and [Appellant] was subsequently arrested.  On May 4, 2021, [Appellant] tampered with [the protected victim's] vehicle in order [to] prevent her from leaving her residence.  The police were contacted[,] and [Appellant] was arrested.  On June 30, 2021, [Appellant] was involved in an altercation at [the protected victim's] home [involving] their children in which [Appellant] was again arrested. On September 1, 2021, [Appellant] was involved in another altercation with one of their children at [the protected victim's] home, in which he was arrested.  On October 12, 2021, [Appellant] contacted [the protected victim] and told her that he was coming over to her home and that he intended on using the shower facilities within the home.  [The protected victim] reported this incident to the police.  Soon thereafter[, the protected victim] arrived home with their son[,] and the son believed that he [saw Appellant] in the [backyard] of the home.  Once again[, the protected victim] contacted the police.  Early the next morning on October 13, 2021, [the doorbell at the protected victim's home] rang around 3:00 a.m.  She contacted the police who thereafter found [Appellant] in the [backyard] of the home hiding behind a tree stump.

Trial Court Opinion, 10/28/22, at 2-3.

the trial court reconsider its sentences. The trial court denied Appellant's post-sentence motion on December 7, 2021. This appeal followed.[4]

Appellant raises the following issue for our review:

> Did the trial court err by imposing an aggregate sentence of one to two years of incarceration, followed by [one year] of probation, which is manifestly excessive, unreasonable, and contrary to the dictates of the Sentencing Code? Specifically, did the [trial] court fail to consider the rehabilitative needs of [Appellant] as required by 42 Pa.C.S.[A.] § 9721(b), fail[] to consider the non-violent nature of the offenses[,] and ignore[ Appellant's] stated interest in treatment?

Appellant's Brief at 8.

Appellant's issue challenges the discretionary aspects of his sentence, arguing that the trial court abused its discretion when it imposed a manifestly excessive sentence without considering Appellant's rehabilitative needs or the non-violent nature of the offenses and failed to set forth, in open court, the reasons for its sentence, as is required by Section 9721(b) of the Sentencing Code. *Id.* at 8, 14-16.

Preliminarily, we must address whether Appellant is permitted, pursuant to Section 9781(b) of the Sentencing Code,[5] to petition this Court for

---

[4] Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

[5] Section 9781(b) of the Sentencing Code provides, in relevant part, that "[a] defendant . . . may file a petition for allowance of appeal of the discretionary aspects of a sentence for a felony or a misdemeanor to the appellate court that has initial jurisdiction for such appeals . . . ."

allowance of appeal to challenge the discretionary aspects of his sentence.[6] In other words, does Section 9781(b) of the Sentencing Code apply to appeals from sentences imposed pursuant to Section 6114 of the PFAA?

This inquiry requires the interpretation of statutes and, thus, raises a question of law for which our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. McMullen**, 961 A.2d 842, 846 (Pa. 2008). When our review involves statutory interpretation, we are ever-mindful that our review is governed by the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1501 *et seq.*, "under which our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review." **Commonwealth v. Wright**, 14 A.3d 798, 814 (Pa. 2011); **see also** 1 Pa.C.S.A. § 1921(a) (stating, "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.").

> Generally, the best indication of the General Assembly's intent may be found in the plain language of the statute. In this regard, it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include.

---

[6] We embark on this analysis in light of our prior decisions in **Wagner v. Wagner**, 564 A.2d 162 (Pa. Super. 1989) and **Commonwealth v. Marks**, 268 A.3d 457 (Pa. Super. 2021), which, as discussed more fully *infra*, held that certain provisions of the Sentencing Code, namely Section 9756, which requires a trial court to specify both a minimum term and a maximum term of incarceration as part of its sentence, were not applicable to sentences imposed upon conviction of indirect criminal contempt pursuant to Section 6114. **See Wagner**, 564 A.2d at 164; **see also Marks**, 268 A.3d at 461.

> Consequently, as a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say.

*Wright*, 14 A.3d at 814 (citations, quotation marks, and brackets omitted).

The PFAA is unique in the sense that a PFA proceeding is initiated by an individual, and not the Commonwealth, as is the case with criminal matters under the Crimes Code, 18 Pa.C.S.A. §§ 101 *et seq.* Therefore, a PFA proceeding is civil in nature. In the simplest of terms, the primary objective of the PFAA is to prevent abuse and provide a means by which a victim of abuse can seek redress and protection.[7] The enforcement of a PFA order, through a finding by the trial court of indirect criminal contempt pursuant to Section 6114,[8] on the other hand, is criminal in nature because the Commonwealth is required to prove the elements of the indirect criminal contempt,[9] and the statutorily prescribed punishment for a violation of a PFA

---

[7] Section 6106(a) of the PFAA states that, "[a]n adult or an emancipated minor may seek relief under this chapter for that person . . . by filing a petition with the court alleging abuse by the defendant." 23 Pa.C.S.A. § 6106(a). As this Court recently explained, "the [PFAA is] meant to address spousal and child abuse, and its goal is to prevent future abuse rather than impose punishment for past abuse." *Marks*, 268 A.3d at 459.

[8] Section 6114(a) of the PFAA states that, "[w]here the police, sheriff[,] or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a [PFA] order . . . the [trial] court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law." 23 Pa.C.S.A. § 6114(a).

[9] As our Supreme Court has stated:

order may include, *inter alia*, incarceration or probation.[10] **See Commonwealth v. Charnik**, 921 A.2d 1214, 1217 (Pa. Super. 2007) (stating, "PFAA proceedings are initiated in [an] effort to stop [the] perpetration of abuse and are civil in nature, while the indirect criminal contempt actions are criminal in nature and seek punishment for [a] violation of a protective order" (emphasis omitted)); **see also Wagner**, 564 A.2d at 163 (stating that, "finding an individual in contempt of a PFA order involve[s] a proceeding that is criminal in nature" while the PFAA, overall, "has its roots in equity and is essentially civil"); **Commonwealth v. Falkenhan**, 452 A.2d 750 (Pa. Super. 1982) (stating, "[c]riminal contempt of court is a crime"). A finding of indirect criminal contempt "is unlike other substantive crimes," such as third-degree murder, robbery, or aggravated assault, where the Legislature has declared and defined what acts are crimes and prescribed the punishment

---

> Indirect criminal contempt is a violation of a court order that occurred outside the court's presence. To prove indirect criminal contempt, evidence must be sufficient to establish: the court's order was definite, clear, specific, and leaving no doubt in the person to whom it was addressed of the conduct prohibited; the contemnor had notice of the order; the act constituting the violation was volitional; and the contemnor acted with wrongful intent.

**McMullen**, 961 A.2d at 849 (citations omitted).

[10] "A sentence for [indirect criminal] contempt under [the PFAA] may include[, *inter alia*,] a fine of not less than $300[.00] nor more than $1,000[.00] and imprisonment up to six months[, or] a fine of not less than $300[.00] nor more than $1,000[.00] and supervised probation not to exceed six months[.]" 23 Pa.C.S.A. § 6114(b)(1)(i)(A) and (B).

for the commission of the crime.[11]  **McMullen**, 961 A.2d at 849.  Instead, indirect criminal contempt, while classified as a "crime," or perhaps better referred to as a "*quasi*-crime," is an offense against a court's inherent authority to enforce its orders, and not necessarily against the public, as is the case with substantive criminal acts as defined by the Crimes Code.  **Id.** at 849-850.  The court's power to impose summary punishment[12] for acts of indirect criminal contempt is "a right inherent in courts and is incidental to the grant of judicial power under Article 5 of [the Pennsylvania] Constitution."  **Id.** at 849.

Because of the *quasi*-civil/*quasi*-criminal nature of the PFAA, proceedings thereunder do not require the full panoply of rights afforded a criminal defendant.  **Marks**, 268 A.3d at 459 (stating, "[w]hile a [PFAA]

---

[11] While the Crimes Code "abolished common law crimes," (**see** 18 Pa.C.S.A § 107(b) (stating, "**Common law crimes abolished.** - No conduct constitutes a crime unless it is a crime under this title or another statute of this Commonwealth" (emphasis in original))), courts retain the power, *inter alia*, "to punish for contempt."  **See** 18 Pa.C.S.A. § 107(c); **see also McMullen**, 961 A.2d at 849.

[12] "Summary punishment" may include a fine or term of incarceration, or both. Because the power of punishment for indirect criminal contempt is inherent in the court's authority to enforce its order, the Legislature may not restrict the court's authority by legislatively providing maximum penalties.  **McMullen**, 961 A.2d at 850.  A court should, however, be mindful that if the term of incarceration exceeds six months, certain procedural rights, *i.e.* right to a trial by jury, may become available to an accused.  **Id.** at 847.

We recognize that the legislatively prescribed punishments set forth in Section 6114(b) of the PFAA are inconsistent with our Supreme Court's holding in **McMullen**, as more fully discussed *infra*.

proceeding is criminal in nature, it does not receive all of the protections that regular criminal proceedings receive"). An individual accused of indirect criminal contempt under the PFAA is "entitled to the essential procedural safeguards that attend criminal proceedings generally" including, *inter alia*, the right to be notified of the allegations, the right to prepare a defense and be heard, the right to assistance of counsel, and the requirement that the Commonwealth prove every element of the offense beyond a reasonable doubt. ***Cipolla v. Cipolla***, 398 A.2d 1053, 1056 (Pa. Super. 1979); ***see also Commonwealth v. Brumbaugh***, 932 A.2d 108, 110 (Pa. Super. 2007) (stating, "[a]s with those accused of any crime, one charged with indirect criminal contempt is to be provided the safeguards which [statutory] and criminal procedures afford" (original quotation marks and citation omitted)). The accused, however, does not enjoy the right to a preliminary hearing, the right to a jury trial, or the requirement that the term of incarceration include both a minimum and a maximum sentence.[13] ***Wagner***, 564 A.2d at 163; ***see also Marks***, 268 A.3d at 459.

With these understandings of an indirect criminal contempt conviction under the PFAA in mind, we return to the question of whether Section 9781(b)

---

[13] "The right to a jury trial under the Sixth Amendment to the United States Constitution and Article I, §§ 6, 9 of the Pennsylvania Constitution applies when a criminal defendant faces a sentence of imprisonment exceeding six months." ***McMullen***, 961 A.2d at 847. It is conceivable, that if a trial court were to impose a term of incarceration exceeding six months for a conviction of indirect criminal contempt that the defendant would be entitled to a jury trial.

is applicable to a sentence imposed under Section 6114(b) because Section 9781(b) of the Sentencing Code is the statutory authority for challenges targeting the discretionary aspects of a sentence. In relevant part, Section 9781(b) states that "[a] defendant or the Commonwealth may file a petition for allowance of appeal of the discretionary aspects of a sentence **for a felony or a misdemeanor** to the appellate court that has initial jurisdiction for such appeals." 42 Pa.C.S.A. § 9781(b) (emphasis added).

The offense of indirect criminal contempt is not specifically classified by the PFAA as, for example, a felony, misdemeanor, or summary offense. ***See*** 23 Pa.C.S.A § 6114. Therefore, we turn to Section 106 of the Crimes Code, which delineates the various classes of offenses, for guidance. Section 106(d) of the Crimes Code states, "[a]ny offense declared by law to constitute a crime, **without specification of the class thereof**, is a misdemeanor of the second degree, if the maximum sentence does not make it a felony under this section." 18 Pa.C.S.A. § 106(d) (emphasis added). The lowest "class" of a felony offense is a felony of the third degree, which has a maximum term of imprisonment not to exceed seven years. 18 Pa.C.S.A. § 106(b)(4). Section 6114(b) of the PFAA permits a trial court to sentence a defendant to a term of imprisonment not to exceed 6 months. Thus, indirect criminal contempt under Section 6114 could be classified as a misdemeanor of the second degree because the PFAA does not specify the class of offense and the maximum sentence does not make the offense a felony. 18 Pa.C.S.A. § 106(d).

Section 106(b)(8), however, states that "[a] crime is a misdemeanor of the third degree . . . if a person convicted thereof may be sentenced to a term of imprisonment, **the maximum of which is not more than one year**." 18 Pa.C.S.A. § 106(b)(8) (emphasis added). Thus, pursuant to Section 106(b)(8), a conviction for indirect criminal contempt under Section 6114 of the PFAA could be classified as a misdemeanor of the third degree because the maximum term of imprisonment cannot exceed 6 months. Because an ambiguity exists in the classification of a conviction of indirect criminal contempt under Section 6114 of the PFAA, a defendant is entitled to receive the benefit of the ambiguity. *Commonwealth v. Gamby*, 283 A.3d 298, 306 (Pa. 2022) (stating that, "under the rule of lenity, an ambiguous penal statute must be strictly construed in favor of the defendant"). Thus, a conviction of indirect criminal contempt under Section 6114 of the PFAA is a misdemeanor of the third degree.[14]

Because the crime of indirect criminal contempt under Section 6114 is a misdemeanor, we find that Appellant, in the case *sub judice*, is permitted to petition this Court, pursuant to Section 9781(b), for allowance of appeal. *See* 42 Pa.C.S.A. § 9781(b); *see also Commonwealth v. Taylor*, 137 A.3d 611, 618 (Pa. Super. 2016) (permitting, without discussion, an appellant to raise a challenge to the discretionary aspects of a sentence imposed for indirect

---

[14] For purposes of the case *sub judice*, our concern is that a conviction of indirect criminal contempt under Section 6114 is a misdemeanor, regardless of whether it is designated as one of the second or third degree.

- 13 -

criminal contempt of a PFA order, but finding such a challenge waived for failure to include a Rule 2119(f) statement and failure to raise the claim at sentencing or by way of post-sentence motion).

When an appellant petitions this Court pursuant to Section 9781(b) for allowance of appeal, it is well-settled that "[a]n appellant challenging the discretionary aspects of his[, or her,] sentence must invoke this Court's jurisdiction by satisfying a four-part test[.]" **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010).

> We conduct a four-part analysis to determine: (1) whether [the] appellant [] filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, [**see**] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Moury**, 992 A.2d at 170 (citation omitted). "We evaluate on a case-by-case basis whether a particular issue constitutes a substantial question about the appropriateness of sentence." **Commonwealth v. Hill**, 210 A.3d 1104, 1116 (Pa. Super. 2019) (citation omitted), *appeal denied*, 220 A.3d 1066 (Pa. 2019). If an appellant fails to challenge the discretionary aspects of a sentence either by presenting a claim to the trial court at the time of sentencing or in a post-sentence motion, then the appellant's challenge is waived. **Commonwealth v. Lamonda**, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*) (citation omitted), *appeal denied*, 75 A.3d 1281 (Pa. 2013). A

substantial question exists when an appellant presents a colorable argument that the sentence imposed is either (1) inconsistent with a specific provision of the Sentencing Code or (2) is "contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010), *appeal denied*, 14 A.3d 825 (Pa. 2011). Specifically, the Rule 2119(f) statement "must explain where the sentence falls in relation to the sentencing guidelines, identify what specific provision of the [Sentencing] Code [or] what fundamental norm was violated, and explain how and why the [trial] court violated that particular provision [or fundamental] norm."[15] *Commonwealth v. Feucht*, 955 A.2d 377, 384 (Pa. Super. 2008), *appeal denied*, 963 A.2d 467 (Pa. 2008). In determining whether a substantial question exists, this Court "cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement[.]" *Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa. Super. 2013), *aff'd*, 125 A.3d 394 (Pa. 2015).

Here, the record demonstrates that Appellant filed timely notices of appeal and properly preserved a challenge to the discretionary aspects of his sentences in his post-sentence motion. In his Rule 2119(f) statement,

---

[15] We are cognizant that the sentencing guidelines do not apply to sentences imposed for a conviction of indirect criminal contempt pursuant to Section 6114. *See* 204 Pa. Code § 303.1 (stating, "[t]he sentencing guidelines do not apply to sentences imposed as a result of the following: accelerated rehabilitative disposition; disposition *in lieu* of trial; direct or indirect contempt of court; violations of [PFA] orders; revocation of probation, except as provided in 204 Pa. Code Chapter 307; or revocation of parole").

Appellant asserts that he received "clearly unreasonable" sentences that, because they were imposed consecutively, were "manifestly excessive" under the circumstances. Appellant's Brief at 15. Appellant asserts that Section 9721(b) of the Sentencing Code is applicable to a sentence imposed pursuant to Section 6114, and the trial court, in fashioning its sentences, failed to consider his rehabilitative needs and desire to seek treatment, as well as the "non-violent nature of the offenses." *Id.* at 8. Appellant further contends that "the trial court erred in not making a part of the record[, and] not disclosing in open court, the reasons for the sentence[s] imposed" as required by Section 9721(b). *Id.* at 16.

Because Appellant relies upon Section 9721(b) of the Sentencing Code in asserting that he raised a substantial question, we must next determine whether Section 9721(b) of the Sentencing Code is appliable to a sentence imposed under Section 6114.

Section 9721(b) of the Sentencing Code states, in pertinent part, that

the [trial] court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with [S]ection 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the [trial] court imposes a sentence for a felony or misdemeanor, modifies a sentence, resentences a person following revocation of probation[,] or resentences following remand, the [trial] court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b).

- 16 -

In determining the applicability of Section 9721(b) to a sentence imposed for indirect criminal contempt pursuant to Section 6114, we are guided by this Court's decision in **Wagner**, **supra**, as reaffirmed by **Marks**, **supra**.

In **Wagner**, the trial court found Wagner in indirect criminal contempt of a PFA order and sentenced him to a flat sentence of six months' incarceration.[16] **Wagner**, 564 A.2d at 162. On appeal, Wagner asserted that the trial court's sentence imposed a flat term of incarceration without stating minimum and maximum sentences in violation of Section 9756(b) of the Sentencing Code.[17] **Id.**; **see also** 42 Pa.C.S.A. § 9756(b) (effective, Feb. 18, 1983 to Aug. 20, 2000). The **Wagner** Court held that Wagner's flat sentence

---

[16] Section 10190(b) of the then-current version of the PFAA provided that, "notwithstanding any provision of the law to the contrary any sentence for this contempt may include imprisonment up to six months or a fine not to exceed $1000[.00] or both[.]" **Wagner**, 564 A.2d at 163, *citing* 35 P.S. § 10190(b). Section 10190(b) was repealed on March 18, 1990, and replaced with Section 6114(b) of the newly-codified PFAA, 23 Pa.C.S.A. §§ 6101-6122 (effective, Mar. 18, 1990) and made part of the Domestic Relations Code. **See** 23 Pa.C.S.A § 6114(b) (stating, in pertinent part, that, "[a] sentence for contempt under this chapter may include imprisonment up to six months or a fine of not to exceed $1,000[.00], or both, and may include other relief set forth in this chapter") (effective Mar. 18, 1990 to Dec. 5, 1994).

[17] The then-current version of Section 9756(b) of the Sentencing Code stated, "[t]he [trial] court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed." 42 Pa.C.S.A. § 9756(b) (effective, Feb. 18, 1983 to Aug. 20, 2000). The provision of Section 9756(b) applicable in **Wagner**, **supra**, is currently codified in Section 9756(b)(1), which states, "[t]he [trial] court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed." 42 Pa.C.S.A. § 9756(b)(1) (effective Dec. 18, 2019).

of six months' incarceration was legal. *Wagner*, 564 A.2d at 164. It reasoned that,

> While a [PFAA] proceeding is criminal in nature, it does not receive all of the protections that regular criminal proceedings receive. While [indirect] criminal contempt [of a PFA order] is a crime, the sanctions imposed because of it are best left to the discretion of the offended court limited by only a few legislative restrictions. The [PFAA] was enacted as specific remedial legislation and for this [C]ourt to require that contemnors under [the PFAA] receive minimum as well as maximum sentences would only weaken the effectiveness of the [PFAA]. Had the legislature intended that minimum and maximum sentencing requirements be part of the sanctions for indirect criminal contempt under the [PFAA], it would have included such language in the [PFAA].

*Id.*

In *Marks*, *supra*, this Court confronted a challenge to a flat sentence of 150 days' incarceration imposed on Marks, pursuant to Section 6114, for indirect criminal contempt of a PFA order. *Marks*, 268 A.3d at 458. Marks argued that his flat sentence was illegal because it did not include minimum and maximum terms of incarceration as required by Section 9756(b)(1) of the Sentencing Code. *Id.* at 459; *see also* 42 Pa.C.S.A. § 9756(b)(1). The *Marks* Court followed *Wagner*, *supra*, noting that despite the fact that *Wagner* involved Section 10190(b), the *Wagner* decision, and rationale set forth therein, was still good law.[18] *Marks*, 268 A.3d at 460-461. In so

_____

[18] Marks argued that *Wagner*, which was decided under Section 10190(b), was "no longer control[ling] because of subsequent amendments to the [PFAA, namely the amendment to Section 6114.]" *Marks*, 268 A.3d at 459. Marks' argument focused on the fact that Section 10190 included the

holding, the **Marks** Court reiterated that if the Legislature intended for Section 9756 of the Sentencing Code, which required a minimum and a maximum sentence, to apply to the PFAA, and in particular to sentences imposed pursuant to Section 6114(b) of the PFAA, the Legislature would have expressly referenced Section 9756 as part of the PFAA. *Id.* at 461.

Applying the rationale set forth in **Wagner**, *supra*, and **Marks**, *supra*, we find that the Legislature intended for Section 9721(b) of the Sentencing Code to apply to sentences imposed pursuant to Section 6114 of the PFAA. Although Section 9721(b) does not specifically reference the PFAA or, in particular, sentences imposed pursuant to Section 6114(b), Section 9721(b) does state that "[i]n every case in which **the court imposes a sentence for a felony or misdemeanor** . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b) (emphasis added). As discussed *supra*, an indirect criminal contempt conviction is a misdemeanor and because sentences imposed for misdemeanors are included within the confines of Section 9721(b), Section 9721(b) applies to sentences imposed under Section 6114(b) for indirect criminal contempt of a PFA order. **See In Interest of E.O.**, 195 A.3d 583, 586 (Pa. Super. 2018) (stating, "[c]riminal contempt is a crime punishable by imprisonment or fine; sentences

_____

preamble – "Notwithstanding any provision of the law to the contrary," while Section 6114 did not include this preamble.

- 19 -

of imprisonment for contempt must be imposed according to the Sentencing Code"); *see also Hannigan v. Semelsberger*, 272 A.3d 492, 2022 WL 185185, at *4 (Pa. Super. filed Jan. 20, 2022) (unpublished memorandum) (noting that, the trial court must consider the Section 9721(b) factors when imposing a sentence for indirect criminal contempt of a PFA order).

Here, Appellant claims the trial court failed to consider mitigating factors and failed to state its reasons for Appellant's sentences on the record at the sentencing hearing as required by Section 9721(b). Because Section 9721(b) applies to Appellant's sentences in the case *sub judice*, we find that Appellant raises a substantial question.[19] *See Commonwealth v. Goodco Mechanical, Inc.*, 291 A.3d 378 (Pa. Super. 2023) (stating that, "A claim that the trial court failed to state adequate reasons for the sentence on the record raises a substantial question. Likewise, a claim of excessiveness, in conjunction with a claim that the [trial] court did not consider the relevant sentencing criteria [] poses a substantial question."); *see also Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating, a claim that "the imposition of consecutive sentences [was] unduly excessive, together with [a] claim that the [trial] court failed to consider rehabilitative needs upon fashioning its sentence, presents a substantial question"), *appeal denied*, 126 A.3d 1282 (Pa. 2015);

---

[19] We note that the Commonwealth concedes that Appellant raised a substantial question. Commonwealth's Brief at 16, 18.

***Commonwealth v. Dunphy***, 20 A.3d 1215, 1222 (Pa. Super. 2011) (stating, a trial court's failure "to offer specific reasons for a sentence [raises] a substantial question" (original brackets omitted)).  Therefore, we proceed to consider the merits of Appellant's discretionary sentencing claims.

Appellant argues that his overall sentence was manifestly unreasonable because of the consecutive nature of the sentences and because the trial court failed to adhere to the requirements of Section 9721(b) in fashioning its sentences.  Appellant's Brief at 22.  Appellant asserts that the trial court made "absolutely no mention of [Appellant's] rehabilitative needs, or the needs of his family, who did not want [Appellant] to be incarcerated." ***Id.***  Moreover, Appellant contends the trial court failed to discuss his work history or his desire for rehabilitative treatment, and did not rely on a pre-sentence investigation report in fashioning the sentences.  **Id.**  Appellant avers that "the trial court did not give consideration for [Appellant's] rehabilitative needs, and the sentence is clearly unreasonable due to the [trial] court's failure to consider these mitigating factors." ***Id.***  Appellant further contends that pursuant to Section 9721(b), the trial court is required to place its reasons for the sentence on the record and that in Appellant's case, the trial court "really didn't give a reason for the sentence[s] imposed[.]" ***Id***. at 20.

Section 6114(b) of the PFAA states, in pertinent part, that, "[a] sentence for [indirect criminal] contempt under this chapter may include[] a fine of not less than $300[.00] nor more than $1,000[.00] and imprisonment up to six months[, or] a fine of not less than $300[.00] nor more than $1,000[.00] and

supervised probation not to exceed six months[.]" 23 Pa.C.S.A. § 6114(b)(1)(i)(A) and (B). Thus, pursuant to Section 6114(b), a trial court may order an individual, having been convicted of indirect criminal contempt for violating a PFA order, to pay a fine ranging from $300.00 to $1,000.00, and impose a sentence of incarceration or probation, not to exceed six months.[20] *Id.* Moreover, a trial court has the power to impose consecutive

_____

[20] We are cognizant that in **McMullen**, *supra*, our Supreme declared Section 4136(b) of the Judicial Code unconstitutional because it restricted a court's inherent authority to punish for indirect criminal contempt by statutorily imposing a maximum fine and a maximum term of incarceration. **McMullen**, 961 A.2d at 849; *see also* 42 Pa.C.S.A. § 4136(b) (stating, "Except as otherwise provided in this title or by statute hereafter enacted, punishment for [indirect criminal contempt] may be by fine not exceeding $100[.00 or by imprisonment not exceeding 15 days in the jail of the county where the court is sitting, or both, in the discretion of the court."). The **McMullen** Court explained that the Legislature "cannot create a form of indirect criminal contempt and restrict a court's ability to punish individuals who commit contempt of court." **McMullen**, 961 A.2d at 850 (stating that, [w]hile the [L]egislature generally may determine the appropriate punishment for criminal conduct, indirect criminal contempt is an offense against the court's inherent authority, not necessarily against the public"). The **McMullen** Court specifically limited its holding, however, to Section 4136(b). *Id.* at 850 n.6 (stating, "We recognize there is other statutory law concerning contempt in Title 42, *see* 42 Pa.C.S.[A.] §§ 4132-[41]39; however, only [Section] 4136 is at issue in this case.")

Recently, this Court in **Commonwealth v. Leomporra**, 242 A.2d 442, 2020 WL 6821633 (Pa. Super. filed Nov. 20, 2020) (unpublished memorandum) held that Section 4133 of the Judicial Code was unconstitutional because it "improperly infringes on a court's inherent authority to punish individuals who commit indirect criminal contempt of court." **Leomporra**, 242 A.2d 442, 2020 WL 6821633, at *8 (stating, "[l]ike Section 4136(b), Section 4133 is a legislative creation that purports to limit a court's inherent authority to impose punishment for indirect criminal contempt"); *see also* 42 Pa.C.S.A. § 4133 (stating, "Except as otherwise provided by statute, the punishment of

maximum contempt sentences under Section 6114 where a trial court finds an individual in indirect criminal contempt for multiple violations of a single PFA order in order to effectuate the goal of the PFA, which is to deter abuse, and to address the needs of the protected victims. **Hill v. Randolph**, 24 A.3d 866, 871 (Pa. Super. 2011); **see also Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa. Super. 2013) (stating, "Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time"), *appeal denied*, 77 A.3d 1258 (Pa. 2013); 42 Pa.C.S.A. § 9721(a) (stating, "[i]n determining the sentence to be imposed the [trial] court . . . may impose [the sentences] consecutively or concurrently").

Here, Appellant was found to be in indirect criminal contempt of the November 2020 final PFA order on six separate and distinct instances. As such, the trial court sentenced Appellant pursuant to Section 6114(b) to 3 to 6 months' incarceration on four of the six indirect criminal contempt

_____

commitment for contempt provided in section 4132 (relating to attachment and summary punishment for contempts) shall extend only to contempts committed in open court. **All other contempts shall be punished by fine only**." (emphasis added)).

Unlike **Leomporra**, where "the Commonwealth expressly call[ed] into question the constitutionality of Section 4133 in light of **McMullen**" (**see Leomporra**, 242 A.3d 442, 2020 WL 6821633, at *8 n.9), neither party in the case *sub judice* called into question the constitutionality of Section 6114(b) of the PFAA. Since the constitutionality of Section 6114(b) is not before us today, unless and until our Supreme Court or this Court holds otherwise, Section 6114(b) remains valid.

convictions with each term of incarceration set to run consecutively. The trial court sentenced Appellant to 6 months' probation on the two remaining indirect criminal contempt convictions with the terms of probation set to run consecutively to each other and consecutively to the aggregate term of incarceration. Therefore, Appellant's aggregate sentence was 1 to 2 years' incarceration to be followed by 1 year of probation. In sentencing Appellant, the trial court stated,

> I'm going to sentence you to a period of incarceration of not less than three nor more than six months and those sentences of incarceration will run consecutively. At the last two violations, we're going to place you on a period of probation of six months, they will run consecutive[ly] to each other and consecutive[ly] with the periods of incarceration. And the periods of probation will require that you comply with the [Justice Related Services] plan and you are to be released to Justice Related Services only.

N.T., 11/19/21, at 29.

The record demonstrates that the trial court heard testimony from Appellant regarding his need for, and attempts to receive, mental health treatment.[21] N.T, 11/19/21, at 21-25. Thus, the trial court was aware of

_____

[21] Appellant testified regarding his 15-year struggle with cocaine addiction and his realization that he needed mental health treatment only to find that his attempts to obtain such treatment placed him on a six to twelve month waiting list. N.T., 11/19/21, at 21. Appellant further testified that he attempted to receive mental health treatment from five different hospitals, that he attempted suicide three to four times, and was, himself, a victim of prior physical and sexual abuse. *Id.* at 21, 28.

We recognize that Appellant's testimony regarding his mental health struggles was offered as part of the proceeding to determine whether Appellant was in

Appellant's mental health needs. The trial court also heard from the victim, who detailed the circumstances that led to Appellant's convictions and the impact Appellant's behavior had on the victim and their children. *Id.* at 3-17. Moreover, in imposing its sentence, the trial court ordered Appellant to comply with the Justice Related Services plan while incarcerated and, upon serving his term of incarceration, be released to Justice Related Services.[22] In so ordering, the trial court recognized Appellant's need for mental health treatment and rehabilitation in fashioning its sentences. In viewing the record as a whole, we find the trial court considered the facts of the crime and Appellant's character, pursuant to Section 9721(b). While Appellant, in the case *sub judice*, may have desired more, the trial court fulfilled its obligations under Section 9721(b). *See Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa. Super. 2010) (stating, a trial court "need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender").

_____

indirect criminal contempt of the PFA order and was not repeated as part of the sentencing hearing, which immediately followed Appellant's convictions of indirect criminal contempt.

[22] Justice Related Services is a program designed to provide services and assistance to individuals with, *inter alia*, mental health issues who are involved in the criminal justice system. ***See*** www.https://allegheny.pa.networkofcare.org/mh/services/agency.aspx?pid=humanservicesadministrativeorganizationjusticerelatedservices_2_758_0 (last visited Aug. 14, 2023).

Judgments of sentence affirmed. Case remanded for correction of clerical error at CP-4352. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2023