J-S22021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
PAUL HUBBELL :
:
Appellant : No. 31 WDA 2024

Appeal from the Judgment of Sentence Entered December 13, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-MD-0000675-2023

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.: **FILED: July 26, 2024**

Paul Hubbell ("Hubbell") appeals from the judgment of sentence imposed following his guilty plea to indirect criminal contempt ("contempt") based on his violation of an order issued pursuant to the Protection from Abuse Act ("the PFA Act").[1] We affirm.

Hubbell and D.S. are the parents of two minor children, who were adjudicated dependent. In December 2022, Hubbell consented to a final, two-year PFA Act order ("the PFA order"), which prohibited him from having any direct or indirect contact with D.S., and excluded him from D.S.' residence, which appears to have been issued by the housing authority. *See* N.T., 12/13/23, at 7. It also appears the housing authority "banned" Hubbell from

_____

[1] 23 Pa.C.S.A. §§ 6101-6122.

the property.  **Id**.  The children were subsequently reunified with D.S. at her residence.

On November 21, 2023, Hubbell and D.S. appeared at a permanency review hearing in the children's dependency matter.  At the hearing, "the caseworker raised ongoing concerns with the children's safety in [D.S.'] home, due to [Hubbell] continuing to show up at [the] residence, despite the active PFA" order.  Trial Court Opinion, 3/4/24, at 1.  The trial court repeatedly reminded Hubbell, against his protestations, that the PFA order prohibited him from going to D.S.' home.  The following exchange occurred:

> [Trial court:]  Let's be clear.  There's a [PFA] order signed by the court which says that you have no contact with [D.S.]
>
> [Hubbell:]  Okay.
>
> [Trial court:] Leave [D.S.] alone, or go to jail.
>
> [Hubbell:]  Well, that's — that's wrong.  Because if I didn't do anything wrong, then what is the problem with me being around?  Because I'm not a violent man.
>
> [Trial court:] You consented to a PFA.
>
> [Hubbell:]  I had no choice.  It was either that or —
>
> [Trial court:]  Okay.  We're not discussing this —
>
> * * * *
>
> . . . — any further.  You have contact with [D.S.]; you end up in jail.

**Id**. at 3 (unnecessary capitalization omitted)

Within days of the permanency review hearing, Hubbell violated the PFA order when he appeared at D.S.' home, "destroyed the property[, and] blocked the front door," causing D.S. "to go next door to call 9-1-1."[2]  N.T., 12/13/23, at 3.  For this PFA violation, Hubbell appeared on December 13, 2023 before the same trial court judge who presided over the permanency review hearing.  The Commonwealth advised the trial court that Hubbell would plea guilty "with a recommendation from the Commonwealth [for] probation."[3]  *Id*.  Hubbell admitted to committing the underlying acts and the trial court accepted his guilty plea.  The matter proceeded immediately to sentencing.

Hubbell requested a sentence of probation, explaining: he was thirty-four years old; he has five children;"[4] he was currently employed, earning $14.71 per hour, and was "doing really well financially;" and he and D.S. had "an ongoing relationship and on this occasion they had some sort of disagreement which led to police being called."  *Id*. at 4-5.  Hubbell's counsel

_____

[2] Although the certified record does not indicate the date of this incident, the contempt hearing for this PFA violation took place twenty-three days after the permanency review hearing.

[3] There was no indication that the parties had negotiated a sentencing term.

[4] Hubbell's counsel stated "some of [the children] have been the subject of previous criminal convictions," but the record does not provide any further information about these criminal convictions.  N.T., 12/13/23, at 4.

also stated that Hubbell "doesn't get it that [D.S.] is not allowed to say he can come over . . . if there is . . . a [PFA o]rder. He's not getting that." *Id*.

The trial court noted that Hubbell was "banned [by] the Housing Authority" from going to D.S.' home. *Id*. at 7. The trial court also referred to the permanency review hearing, which had occurred just three weeks earlier:

> [Trial court:] Mr. Hubbell, did you not sit in this courtroom at your dependency hearing a few weeks ago and I very clearly explained the PFA to you and how it worked?
>
> [Hubbell:] You did.
>
> [Trial court:] And did you not stare [down D.S.] and I explained to you that you could not do that?
>
> [Hubbell:] You did.
>
> [Trial court:] So, what possessed you then to leave this courtroom and go to her residence despite the fact that I re-explained the PFA to you during our dependency hearing?
>
> [Hubbell:] The children were sick and [D.S.] asked for my help watching them while she went to an appointment with her son. And it's a stupid mistake.
>
> [Trial court:] But it's not a mistake .
>
> [Hubbell:] It's a stupid choice I made, so.

*Id*. at 5-6.

The trial court and Hubbell also discussed his employment and mental health as follows:

> [Hubbell:] I just really would like to continue moving forward with my life and I had a lot of hard times in the past. I would just like to keep moving forward with my job.

- 4 -

[Trial court:] What are you doing for your mental health right now?

[Hubbell:] Right now I'm on Zyprexa in jail.

[Trial court:] Prior to that you weren't following through with your mental health, were you?

[Hubbell:] No, not too much. I also can go for outpatient at Erie County — . . . right when I get out to Erie County Care Management, I believe, they have a good program.

*Id*. at 6.

The trial court imposed a sentence of six months' imprisonment and ordered a mental health evaluation. The court reasoned:

[Trial court:] Mr. Hubbell, I can't put you on probation at this point. I can't. Because I couldn't have been more clear with you. And . . . this was literally days before this occurred.

It is very clear to me that you are obsessed with [D.S.] and you're unable to leave it alone and I've asked you to, I told you to, I instructed you on the law at our last hearing and you walked out of this courtroom and you know if you go into that housing, she is going to lose her house and she is going to lose those kids.

[Hubbell:] I swear it won't happen again.

[Trial court:] It's going to happen again because your mental health is unstable and you look great right now because you're in jail. Last time you were here, you were a mess.

*Id*. at 7.

Hubbell filed a timely motion to withdraw his guilty plea, arguing, *inter alia*, that the trial court erred by relying on facts "not in the record" when fashioning his sentence. Motion to Withdraw Plea, 12/15/23, at 2. The trial

court denied relief, and Hubbell filed a timely notice of appeal. Both he and the trial court have complied with Pa.R.A.P. 1925.

Hubbell raises the following issue for our review: "Whether the court erred and/or abused its discretion in sentencing [Hubbell] to six months of incarceration when the court considered irrelevant and impermissible evidence?" Hubbell's Brief at 4.

Hubbell argues that the trial court abused its sentencing discretion in the PFA violation proceedings by considering matters not of record — specifically the judge's personal knowledge of the children's dependency proceedings. Hubbell's issue presents a challenge to the discretionary aspects of his sentence. We consider a challenge to the discretionary aspects of sentence to be a petition for permission to appeal, as the right to pursue such a claim is not absolute. *See Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super. 2010). Before we reach the merits of a challenge to the discretionary aspects of sentence, this Court must conduct a four-part analysis determining:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (some citations omitted).

- 6 -

This Court has stated:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."

*Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa. Super. 2012) (citations omitted). A trial court's alleged reliance on matters outside the record raises a substantial question for our review. *See Commonwealth v. Rhodes*, 990 A.2d 732, 745 (Pa. Super. 2009).

In the instant case, Hubbell filed a post-sentence motion, which raised his present claim, and a timely notice of appeal. Hubbell included in his brief a Rule 2119(f) statement, where he raises the issue that "the [trial] court abused its discretion in sentencing . . . where the [c]ourt considered . . . [its] personal knowledge that [was] not of record for consideration as it pertained to the violation of the PFA." Hubbell's Brief at 8-9. This claim raises a substantial question. *See Rhodes*, 990 A.2d at 745. Thus, Hubbell has met the four requirements to preserve an issue for review of the discretionary aspects of his sentence. *See Moury*, 992 A.2d at 170.

We next consider the relevant standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Taylor**, 277 A.3d 577, 592-93 (Pa. Super. 2022) (citation omitted).

Section 6114 of the PFA Act provides that the trial court has discretion to issue a sentence up to six months' incarceration or six months' probation for a violation of a PFA order. **See** 23 Pa.C.S.A. § 6114(b)(1). The goal of the PFA Act is "to prevent future abuse rather than impose punishment for past abuse." **Commonwealth v. Marks**, 268 A.3d 457, 459 (Pa. Super. 2021).

Section 9721(b) of the Sentencing Code, which applies to sentences imposed pursuant to section 6114 of the PFA Act, provides:

> [T]he sentence imposed should call for total confinement that is consistent with. . . the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing. . . .

42 Pa.C.S.A. § 9721(b); **see also Commonwealth v. Bartic**, 303 A.3d 124, 136 (Pa. Super. 2023) (holding that section 9721(b) applies to sentences imposed under section 6114(b) for indirect criminal contempt of a PFA order).

While a violation of a PFA is criminal in nature, it does not afford the same protections as other criminal proceedings. **See Marks**, 268 A.3d at 459. Rather, in the PFA context, the trial court has the inherent power to enforce its orders and impose sanctions for contempt of the orders, and the sanctions imposed for PFA violations "are best left to the discretion of the offended court

limited by only a few legislative restrictions." *Id*. (citation omitted). Further, the sentencing guidelines do not apply to sentences imposed as a result of violations of PFA orders. *See* 204 Pa. Code § 303.1(b); *see also Bartic*, 303 A.3d at 134 n.15. However, a sentence can be considered invalid if the record discloses the sentencing court relied on information outside the record. *See Rhodes*, 990 A.2d at 745.

Hubbell argues that the trial court abused its discretion in issuing an excessive sentence that relied on impermissible facts not in the record, namely: (1) the dependency court proceedings; and (2) his mental health diagnoses and treatment. *See* Hubbell's Brief at 9, 14. Hubbell contends that the "court exclusively relied on information not of the record and solely on its personal knowledge of [him] from prior court interactions." *Id*. at 13. Hubbell avers that even though the trial court stated it properly considered other information in issuing the sentence, such as statements from counsel, Hubbell maintains that it did not. *See id*. at 14. Finally, Hubbell claims that the trial court did not follow or even consider the Commonwealth's recommendation of probation. *See id*. at 14-15.

The trial court held it did not abuse its discretion when it sentenced Hubbell to six months' incarceration. The trial court stated that it considered all relevant factors in issuing its sentence, including Hubbell's age, his employment, his and counsels' statements, and his lack of consistent mental health treatment. The trial court also recognized that when issuing sentences

for violations of PFAs, the sentencing guidelines do not apply, and sanctions are best left to the discretion of the courts and not legislative regulations.

The record demonstrates that the trial court did not solely focus on its knowledge of the prior dependency proceeding in issuing its sentence. The trial court considered other information that was in the record: (1) Hubbell's age; (2) employment; and (3) statements of counsel and himself. *See* N.T., 12/13/23, at 4-5; *see also* Trial Court Opinion, 3/4/24, at 5. Furthermore, the issue of Hubbell's mental health was properly on the record, as the trial court inquired of Hubbell whether he was taking care of his mental health, and he replied, "I'm on Zyprexa in jail," but agreed that before being imprisoned, he was not maintaining this care. N.T., 12/13/23 at 6. The record also reflects that the trial court considered Hubbell's banishment from the "Housing Authority," where the protected party, D.S., resided. *Id*. at 7. The trial court observed that Hubbell returning to the Housing Authority would result in D.S.' losing her home and custody of her children. *See id*. For the foregoing reasons, we conclude no relief is due on Hubbell's claim that the trial court abused its discretion.

Additionally, we note that both Hubbell's Rule 2119(f) statement and argument briefly raise a claim that the trial court abused its discretion because it did not follow the Commonwealth's recommendation for probation. However, Hubbell also acknowledges that, with respect to a guilty plea, a prosecutor's mere recommendation for a sentence is not binding on a trial

court. *See* Hubbell's Brief at 14; *see also Commonwealth v. McClendon*, 589 A.2d 706, 710 (Pa. Super. 1991) (stating that where "the terms of the plea agreement specifically make a recommended sentence nonbinding on the court, there can be no violation of the plea agreement when the court chooses not to follow the recommendation[, as] the defendant has received nothing less than he bargained for"). In any event, we observe the trial court did consider the Commonwealth's recommendation, but ultimately determined that probation was not appropriate, and instead imprisonment was warranted. *See* N.T., 12/13/23, at 7 (trial court stating, "I can't put you on probation at this point."). As stated above, the trial court provided its reasons: it found it had warned and instructed Hubbell "literally days before" the PFA order violation to stay away from D.S., but Hubbell was "unable to leave [her] alone." *Id*.

Finally, Hubbell briefly states twice in his brief that the trial court issued an "illegal" sentence, but he does not provide any further explanation. Hubbell's Brief at 10. Although Hubbell has not previously raised this issue, it is not waived for our review. *See Commonwealth v. Thorne*, 276 A.3d 1192, 1196 (Pa. 2022) (stating that a challenge that implicates the legality of a sentence is not waived for appellate review). Nevertheless, we determine no relief is due, because his sentence of six months' imprisonment falls within the permissible range of section 6114(b)(1). Thus, the court did not impose an illegal sentence.

After reviewing the record as a whole, we conclude that the trial court considered the facts of the violation and Hubbell's character pursuant to section 9721(b) and did not abuse its discretion in imposing a sentence of six months' incarceration.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/26/2024