J-S08039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CORY MATTHEW JONES | : | |
| | : | |
| Appellant | : | No. 2918 EDA 2024 |

Appeal from the Judgment of Sentence Entered September 11, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004315-2023

BEFORE: DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED APRIL 22, 2025**

Cory Matthew Jones appeals from the judgment of sentence, entered in the Court of Common Pleas of Bucks County, after he pleaded guilty to one count each of aggravated indecent assault without consent, aggravated indecent assault of a victim under thirteen years of age, endangering the welfare of a child (EWOC), indecent assault of a victim under thirteen years of age, corruption of a minor, and indecent assault without consent.[1] Jones challenges the discretionary aspects of his aggravated-range sentence. After review, we affirm.

The trial court set forth the disturbing facts of this case as follows:

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3125(a)(1), 3125(a)(7), 4304(a)(1), 3126(a)(7), 6301(a)(1)(ii), and 3126(a)(1).

On February 11th of 2023, Detective Stephen Brookes [] of the Lower Southampton Police Department received a ChildLine report involving a four-year-old female, [the victim], who reported that her father, [Jones], "touched her down there."

[The victim] was interviewed at the Children's Advocacy Center on February 23rd of 2023. During her interview, she reported that [Jones,] on several occasions[,] would pull down her pants as she was lying on his bed and he would pull down his pants. [Jones] would then hold his "pee-pee" in his hand and rub it against her "pee-pee" until his "special white pee-pee" would come out.

During this interview, [the victim] reported that [Jones] would use his fingers to rub her in and around her vagina. [The victim] stated that [Jones] would cover her face with a towel while this was happening. [The victim] reported that this was their secret and should be between [Jones] and her. When [the victim] told him she didn't like it, [Jones] would say, "Don't worry, Honey[,]" while doing it.

[The victim] reported that this abuse occurred at her home located [in the 1700 block of] North Meadowbrook Road in Feasterville, Bucks County, after her mother would leave the residence. [] Detective Brookes[ subsequently interviewed Jones, who] admitted that he touched his daughter's privates under her underwear with his hand on her vagina. [Jones] admitted to rubbing his penis on her vagina and putting a towel over her head when he would do this. [Jones] said this started because she had asked him to rub her vagina. [Jones] told Detective Brookes that he wanted to feel intimacy and his daughter showed him more affection than his wife.

Trial Court Opinion, 11/25/24, 1-2.

The Commonwealth subsequently charged Jones with the above-mentioned crimes, along with rape of a child and aggravated indecent assault of a child—both as first-degree felonies.[2] On April 24, 2024, Jones entered a hybrid guilty plea, at which time the Commonwealth agreed to withdraw the

_____

[2] 18 Pa.C.S. §§ 3121(c) and 3125(b).

charges of rape of a child and aggravated indecent assault of a child in exchange for Jones' plea.[3]

On September 11, 2024, the court sentenced Jones on aggravated indecent assault without consent to four to ten years' incarceration, on aggravated indecent assault of a victim under thirteen years of age to a consecutive four to ten years', and on EWOC to a consecutive two to four years' followed by three years' probation, amounting to an aggregate sentence of ten to twenty-four years' incarceration followed by three years' probation. Each of those sentences imposed fell within the aggravated range of the sentencing guidelines.[4] The court imposed no further penalty on the remaining charges. On September 20, 2024, Jones filed a motion for reconsideration of his sentence, which the court denied on September 25, 2024. Jones filed a timely notice of appeal on October 23, 2024. Jones and the court have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Jones raises the following issue for our review:

Did the trial court err in imposing a sentence that was manifestly excessive because the trial court failed to take into account [Jones'] age, maturity, rehabilitative needs, personal

---

[3] A "hybrid" plea is one in which the parties did not bargain for a specific sentence but negotiated a certain aspect or aspects of the sentence. **Commonwealth v. Heaster**, 171 A.3d 268, 271 (Pa. Super. 2017).

[4] Jones' convictions for aggravated indecent assault without consent and aggravated indecent assault of a victim under thirteen years of age each carried a standard-range sentence of 22-36 months' incarceration, and Jones' conviction for EWOC carried a standard-range sentence of 9-16 months' incarceration.

circumstances[,] and other mitigating factors and focused instead solely on the nature of the charges?

Appellant's Brief, at 10.

Jones challenges the discretionary aspects of his sentence, to which there is no absolute right to appeal. *See Commonwealth v. Hutchison*, 164 A.3d 494, 502 (Pa. Super. 2017); *see also* 42 Pa.C.S. § 9781(b). Instead, an appellant must invoke this Court's jurisdiction by satisfying the following four-part test:

> (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Griffin*, 65 A.3d 932, 935-36 (Pa. Super. 2013) (quoting *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006)).

Here, Jones has satisfied each of the first three requirements, so we may turn our focus to whether he has raised a substantial question.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Griffin*, 65 A.3d at 936 (citations and quotation marks omitted). Further, "[i]n determining whether a substantial question exists, this Court cannot look beyond the statement of questions presented and the prefatory Rule 2119(f)

- 4 -

statement." ***Commonwealth v. Bartic***, 303 A.3d 124, 134 (Pa. Super. 2023) (citation, quotation marks, and brackets omitted).

In his Rule 2119(f) statement, Jones argues that, in imposing Jones' aggravated-range sentence, the court failed to consider all relevant factors such as family history, age, rehabilitative needs, and mitigating factors, including that Jones is a military combat veteran, has serious mental health issues that directly contributed to his conduct, has no prior criminal history, and participated in numerous Bucks County Correctional Facility programs. ***See*** Appellant's Brief, at 13. Jones further complains that the court focused only on the nature of his offenses. ***Id.***

"[A]n excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014). However, an allegation that the sentencing court did not adequately consider various factors does not raise a substantial question. ***See Commonwealth v. Edwards***, 71 A.3d 323, 330 (Pa. Super. 2013). Accordingly, we conclude that Jones has raised a substantial question and proceed to review the merits of his claim.

Our standard of review for a challenge to the trial court's discretion in sentencing is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the

sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill[-]will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Pisarchuk***, 306 A.3d 872, 879 (Pa. Super. 2023) (citation omitted).

Sentencing courts must abide by the limitations set forth in Section 9721. ***See*** 42 Pa.C.S. § 9721. Specifically, the sentencing court must consider the following factors when imposing sentence: "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

> The weighing of factors under 42 Pa.C.S.[] § 9721(b) is exclusively for the sentencing court, and an appellate court may not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines[.]
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics[,] and potential for rehabilitation. Where pre-sentence reports exist, we shall presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.
>
> Moreover, we note the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. It is well-accepted in imposing a sentence, the trial court may determine whether, given the facts of a particular

case, a sentence should run consecutive to or concurrent with another sentence being imposed.

***Commonwealth v. Taylor***, 277 A.3d 577, 593 (Pa. Super. 2022) (case citations, quotation marks, ellipsis, and brackets omitted). The sentencing court's reasons for imposing a particular sentence must demonstrate individualized consideration of the defendant's character. ***See Commonwealth v. Conte***, 198 A.3d 1169, 1176 (Pa. Super. 2018).

When sentencing a defendant in the aggravated range, the court may consider any legal factor. ***See Commonwealth v. Salter***, 290 A.3d 741, 749 (Pa. Super. 2023). "The trial court is vested with broad discretion in determining the defendant's sentence since the court is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." ***Id.*** (citation and quotation marks omitted).

Further, regarding the court's consideration of the sentencing guidelines, we have previously explained that the guidelines are purely advisory:

> A sentencing court is permitted to deviate from the sentencing guidelines; however, the court must place on the record its reasons for the deviation. Indeed,
>
>> the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

***Commonwealth v. Snyder***, 289 A.3d 1121, 1127 (Pa. Super. 2023) (citations, quotation marks, and brackets omitted).

> Appellate courts defer to trial courts in matters of sentencing because:
>
> The sentencing court is in a superior position to review the defendant's character, defiance[,] or indifference, and the overall effect and nature of the crime. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

***Conte***, 198 A.3d at 1177 (citations and quotation marks omitted). Nevertheless, when reviewing the record, the appellate court considers the "nature and circumstances of the offense and the history and characteristics of the defendant," the "opportunity of the sentencing court to observe the defendant, including any presentence investigation," the "findings upon which the sentence was based," and the "guidelines promulgated by the sentencing commission." 42 Pa.C.S. § 9781(d). Further, because, the trial court in this case sentenced Jones in the aggravated range of the sentencing guidelines, this Court must affirm the sentence unless we find that "the sentence is unreasonable." ***Id.*** at § 9781(c)(3).

At sentencing, the trial court stated the following reasons in support of imposing Jones' sentence:

> [W]hen [] imposing a sentence, there are a number of factors that I am to consider, and the first [. . . is] the facts of the case. [S]ome of the words that I jotted down used by different people today were "gruesome," "horrendous," "awful," [and]

"disturbing." I don't even think they accurately describe what happened here. I mean, it's inhuman for a father to do what you did to this child.

[The victim's mother] is the one who referred to it as ["]gruesome.["] She said [the victim's] father is her perpetrator. Her father is supposed to be her protector. And while I hear at times that you are remorseful, I did hear you say something to me[,] "I always put my daughter first." How obscene is that? You raped a child.

[Defense Counsel:] He did not rape her.

[The court:] Well, technically, that's true. He didn't legally rape her. I agree with that.

What you did to this child, you defiled a child, a four-year old child, so mitigated range, I've considered it; it's not happening. This is an aggravated case. This, to me, is so offensive to our society. What you did is horrendous, is gruesome, is disturbing. It's everything we don't want in our society.

I'm to consider the nature and character of the defendant. [. . .] I'm not intimidated by [this case]; I'm shocked by it. [] I see that you are honorably discharged from the military. I appreciate your service to our country. That does not forgive what happened here.

I spent a lot of time reading [the defense expert mitigation] report [of Dr. Kelly Chamberlain, Psy.D.]. I'm considering that. I'm considering the problems that you have, the issues that you are facing, but it's your responsibility to take care of those things. It was your responsibility. If you truly put your family first, you would have been taking care of some of those issues. Instead[,] you sat in your house and you played video games, and then you took advantage of a four-year old child.

Even when that child says she didn't like it, it didn't matter to you, you're so selfish, you continued to do it. And, yes, it happened two or three times that we know of. And it happened and it stopped because this child actually said something, and that's what stopped it, even though you denied it.

And then you put the mother and the child through all of that, and so I'm considering that as part of the nature and character. I'm considering your military service. I'm considering your mental

health issues that I've read in detail in Dr. Chamberlain's report. I'm considering all of those things.

I have to consider the sentencing guidelines[.]

* * *

I have to consider the [] impact your crime had on your victim. And [Defense Counsel] said, "No one knows the effect this will have on [the victim]." No one knows the negative effect. We do know it's going to have a negative effect. We do know that you harmed this child. You harmed a four-year-old child, one that you claim to love. Inexplicably, [the] child['s] mother says that [the victim still says she] loves her father. A father who does that, I question whether that father is even deserving of love.

But I know the innocence of children, and I know how forgiving children can be, but you stole from this child, the innocence of youth, you stole that from her because of your selfishness. This child doesn't trust adults any longer because of you. This is something that's going to live with that child for many, many years. [. . .]

[] I see in here that there is confusion. There should be no confusion for that child. Her father abused her. There's no confusing that. You said that [] it did not even occur to you that you are having a negative impact on that child?

And I don't even believe that because, as I recall, there was a time when you put a blanket over her because of the shame, probably, that you felt and knew at the time. You knew what you were doing, and you did it anyway. Didn't do it once, you did it at least twice and maybe three times. And if you didn't get caught, you'd probably still be doing it.

So[,] I'm thinking about the impact that this is having on that child. Her mother said you did it for a dumb reason. You did it for a selfish reason. You did it without caring about this child. You can tell me you love her. You didn't care one iota about this child. What you did to her is disgusting. I have to think about the need to protect the community. And while there's no evidence in this record that there's a serious need to protect the community from you, there is definitely a need to protect your child from you, and who knows what would have happened if this child didn't speak up. But I am considering all of those things.

I have to consider your need for rehabilitation, which there is no question that you need rehabilitation. You need mental health treatment. You [] sought it out with Dr. Chamberlain, but, again, it appears that this is just because you got caught. So[,] I'm considering all of those factors that I'm to consider here. Obviously, I do not think much of the case from a mitigated standpoint. I do believe, given the circumstances of this case, that an aggravated sentence is appropriate and an extensive one at that.

N.T. Sentencing Hearing, 9/11/24, at 27-33.

On appeal, Jones argues that the court improperly focused on the nature of his crime, as evidenced by the court's use and repetition of the words "gruesome, horrendous, awful, and disturbing," and the court's reference to Jones' crimes as child rape despite not meeting the legal definition. Moreover, Jones avers that the court failed to consider his character, history, and rehabilitative needs. *See* Appellant's Brief, at 18. Jones complains that the court improperly noted, during sentencing, that it believed Jones' crimes would be ongoing if Jones had not been caught. *Id.* at 19. Jones further argues that the facts of his case are not distinguishable from most crimes of this sort and an aggravated-range sentence is unsupported by the record. *Id.* Moreover, Jones contends that the court improperly failed to consider his mitigating factors, including that he "is a combat veteran who has serious mental health issues[,] which directly contributed to [Jones'] conduct, [he has] no prior criminal record[,] and [he] was thirty-seven years of age at the time of sentencing." *Id.* at 20. Further, Jones argues that the court ignored his exhaustive expert mitigation report, authored by Dr. Chamberlain, and ignored his own expression of remorse and acceptance of responsibility.

Accordingly, Jones concludes that his sentence is manifestly excessive and that he is entitled to a remand for resentencing. We disagree.

After our review of the record, sentencing transcript, and the sentencing exhibits, including Dr. Chamberlain's expert mitigation report, we conclude that Jones is not entitled to relief. First, we note that, contrary to Jones' claims, the trial court considered all the mitigation evidence he argues it ignored. Rather, we observe that Jones' complaint is actually a request for this Court to reweigh the sentencing factors already weighed by the sentencing court, which we may not do. *See Taylor*, *supra*; *Salter*, *supra*. Also, aside from mentioning each of Jones' mitigating factors on the record, the trial court expressly specified that it reviewed and considered Dr. Chamberlain's report in imposing sentence. *See* N.T. Sentencing Hearing, 9/11/24, at 4, 28. Accordingly, the court properly weighed Jones' mitigation evidence as well as the expert report. *See Taylor*, *supra*.

Second, we observe that the court's sentence was not solely based on the seriousness of the offense; the court specifically identified the multitudinous factors it considered prior to imposing sentence, including the required statutory factors and Jones' mitigation evidence. *See* N.T. Sentencing Hearing, 9/11/24, at 27-33. More specifically, the court considered Jones' nature and character, the facts of the case, the guideline sentences, the impact on the victim and community, the need for protection from Jones, and Jones' need for rehabilitation. *Id.* Indeed, contrary to his claims, in evaluating Jones' nature and character, the court was permitted to

- 12 -

consider the likelihood that Jones' crimes would be ongoing due to how they were discovered.

Third, under these circumstances, including that Jones is the victim's father, that the victim's early age made her highly vulnerable, that Jones continued to abuse the victim even when she told him she did not like it, that there were multiple separate incidents where Jones abused the victim, and that there were indicia Jones was aware of the harms he created when committing his crimes, we conclude that Jones' aggravated-range sentence does not constitute too severe a punishment.

Fourth, we observe that the court agreed with the correction when it mistakenly discussed child rape at sentencing. *See id.* at 28. Given the facts alleged in this case as well as the nature of the charges filed against Jones, including rape of a child, we conclude that the court's brief misstatement was not the product of any partiality, prejudice, bias, ill-will, or manifest unreasonableness, especially where it immediately agreed with the correction. *Id.* Indeed, the court did not sentence based on a child rape conviction.

Finally, the sentencing court was free to discount Jones' expressions of remorse and claimed lack of knowledge of the harm he was committing because the record establishes that he waited until the victim's mother left the house to commit his crimes and further placed a covering over the victim during the abuse. *See Salter*, *supra*. Since we discern no abuse of discretion or legal error, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/22/2025</u>