J-A07016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TAYLOR NICHOLLE FABIO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KRISTOFFER HEXTER | : | |
| | : | |
| Appellant | : | No. 1522 MDA 2025 |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WAYNE D. CARTER JR. | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRUCE HEXTER | : | |

Appeal from the Order Entered October 7, 2025
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2020-2-0074

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: JUNE 12, 2026**

Appellant, Kristoffer Hexter ("Father"), appeals *pro se* from the October

7, 2025 order entered in the Lebanon County Court of Common Pleas following

Father's petition for modification for custody of A.R.H. ("Child") in which the

court denied Father's request to terminate the custody rights of Mother's

fiancé and granted Bruce Hexter ("Paternal Grandfather") visitation rights.

After careful review, we are constrained to vacate and remand for further proceedings.

The relevant facts and procedural history are as follows. Father and Taylor Nicholle Fabio ("Mother") are the biological parents of Child. Child resides with Mother and Mother's fiancé. Father has been incarcerated since 2021, serving a sentence of 54 months to 10 years for sex-related crimes involving a 14-year-old victim. Father will be eligible for parole in 2026.

On May 26, 2023, pursuant to an agreement reached by the parties in custody conciliation, the court entered an order granting Mother, Father, and Mother's fiancé shared legal custody of Child and Mother primary physical custody of Child. The court also granted Father and Mother's fiancé physical custody "as the parties may agree." Order, 5/26/23.

On October 2, 2023, Father filed a petition for modification of custody, requesting that the court limit shared legal custody to only Father and Mother, while leaving the physical custody arrangement unchanged. Father also requested additional contact and communication with Child. On July 21, 2025, Paternal Grandfather filed a petition to intervene in this action, which the court granted.

On July 28, 2025, the court held a custody hearing on the matter. Father clarified that he sought to remove Mother's fiancé's legal custody of Child on the basis that Mother's fiancé was not the biological father and should not have legal rights to make decisions on Child's behalf. Father also clarified that Father was seeking "at a minimum one phone call per week with [Child]

- 2 -

and one video visitation per month." N.T. Hr'g, 7/28/25, at 13. Father testified that he had not spoken to his daughter in over a year but had communicated with her by mail several times by sending cards to Paternal Grandfather's address so that Paternal Grandfather could deliver the mail to Child.

Paternal Grandfather testified that he had last seen Child in 2023 and would like to have physical visits and phone calls with Child at least once a month. Paternal Grandfather testified that he had not delivered Father's mail to Child because Mother had told Paternal Grandfather not to communicate with Child.

Mother testified that Father had never participated in any legal custody matters or parental responsibilities and that she believes it is not safe for Child to communicate with Father because of the nature of Father's convictions and the lack of relationship between Father and Child. Mother testified that she would be willing to facilitate communication and visits between Child and Paternal Grandfather. Mother admitted that, on at least one occasion, there had been police involvement due to an argument between her and her fiancé but that they were now engaged.[1] Mother also informed the court that she, her fiancé, and Child had moved to Cheswick, Pennsylvania in November

---

[1] Following the hearing, Father informed the court of the existence of a petition for protection from abuse ("PFA") filed by Mother against her fiancé in Allegheny County.

- 3 -

2024. She stated that she had informed her attorney of the relocation but was not sure if Father had been notified.

On October 7, 2025, the court granted Paternal Grandfather visitation rights as the parties may agree and denied Father's petition in all other respects. The court specified in its order that Father could write letters and send mail to Child but could not have telephone or video conversations with Child.

On October 27, 2025, Father *pro se* filed a "Petition for Injunctive Relief" requesting an "emergency injunction recalling [Mother] back to the jurisdiction of the [c]ourt," asserting that the relocation was contrary to Child's best interests. Petition, 10/27/25. On October 29, 2025, the court denied Father's petition.

This appeal followed. On December 4, 2025, Father filed late a Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal.[2] The trial court complied with Rule 1925(a).

Father raises the following issues for our review:

_____

[2] A Rule 1925(b) statement must be filed concomitantly with the notice of appeal for children's fast track cases pursuant to Rule 1925(a)(2)(i). Here, on November 4, 2025, the trial court directed Father to file his Concise Statement, and, by order filed November 24, 2025, granted an extension to December 9, 2025. Father filed his Concise Statement on December 4, 2025. Accordingly, we decline to quash this appeal. *See In re K.T.E.L.*, 983 A.2d 745, 747-48 (Pa. Super. 2009) (holding that failure to file a Rule 1925(b) statement concurrently with a children's fast track appeal is considered a defective notice of appeal, to be disposed of on a case-by-case basis, but did not result in dismissal or quashal where there was no prejudice to the other parties as a result of the late filing).

1. Did the trial court commit an error of law or abuse of discretion by failing to articulate legal basis for restriction of parental communication?

2. Did the trial court commit an error of law or abuse of discretion by failing to consider mandatory best interest factors?

3. Did the trial court fail to discuss relocation factors under 23 Pa.C.S. § 5337 and [err] by allowing parties to move without notification to the court and to all parties involved?

4. Did the trial court fail to articulate order and opinion of October 7, 2025 in contrast to the May 24, 2023 order?

5. Did the trial court err and abuse its discretion by failing to consider evidence of past domestic incidents involving police contact in a custody proceeding where the child's safety is paramount?

6. Did the trial court err and abuse its discretion by granting custody rights to [Mother's fiancé] and failing to conduct a risk of harm hearing regarding [Mother's fiancé], particularly after being informed of an active [PFA] order against him [] and by failing to adequately consider the best interests of the child in light of this new information?

7. Did the trial court commit an error of the Pennsylvania Rules of Civil Procedure 1915.4(d) regarding expedited nature and prompt entry of orders?

8. Did the trial court commit a procedural error of the Pennsylvania Rules of Appellate Procedure 4007 and [] 1911 by failing to respond to multiple requests for transcripts?[3]

Father's Br. at 5-6 (unnecessary capitalization omitted).[4]

* * *

_____

[3] Notwithstanding Father's protestations that the trial court failed to act on his request for the court reporter to transcribe the notes of testimony of the July 28, 2025 custody hearing, both volumes of the transcripts are included in the certified record. Thus, we do not need address this claim of error.

[4] Appellees did not file a brief on appeal.

- 5 -

We first consider Father's first and second issues together. Father asserts that the court failed to consider the best interest factors as required by the Child Custody Act when it entered its October 7, 2025 order. *Id.* at 12-14. Father also asserts that the court did not articulate any legal basis for restricting his contact with Child by prohibiting phone and video communication. *Id.* at 10-12.

This Court reviews a custody determination for an abuse of discretion. *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *Id.* Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Id.*

Further, when this Court reviews a trial court's "best interests" analysis in custody matters, our scope of review is broad but we are "bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Importantly, "on the issues of credibility and weight of the evidence, we defer to the findings [of] the trial judge." *Id.* (citation omitted). We can only interfere where the "custody order is manifestly unreasonable as shown by the evidence of record." *Id.* (citation omitted).

The Child Custody Act, 23 Pa.C.S. §§ 5321-5340, requires a trial court to consider all of the Section 5328(a) best interest factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a). When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors. *E.D. v. M.P.*, 33 A.3d 73, 79-80 (Pa. Super. 2011). "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). The record must be clear on appeal that the trial court considered all the factors. *Id.*

Further, this Court has clarified that "incarcerated parents seeking contact with their children are seeking 'a form of custody,' *i.e.*, supervised physical custody via either an original complaint or a modification petition[.]" *S.T. v. R.W.*, 192 A.3d 1155, 1166 (Pa. Super. 2018). Accordingly, "the custody court must consider the custody factors under [Section] 5328(a) when deciding these prison cases." *Id.*

When reviewing child custody matters and the trial court's consideration of the Section 5328(a) factors, our paramount concern is the best interests of the child. *See Saintz*, 902 A.2d at 512. "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Id.* (citation omitted).

Here, the trial court stated that it did "not see a review of the custody factors as being relevant to this appeal" because Father is currently incarcerated and, thus, "cannot exercise custody rights." Trial Ct. Op., 12/12/25, at 3 (quoting Order and Op., 10/7/25, at 6-7). The court also asserted that it did not need to analyze the factors because:

> [T]here was no information available to the [c]ourt with regard to Father's circumstances with the exception of his lengthy incarceration and the fact that he has never had any meaningful participation in [Child's] life. The absence of any additional information rendered it impossible for us to embark on an analysis of these factors. Had there been any evidence of a pre-existing relationship between Father and [Child], the custody factors may have been relevant in formulating a decision on [Child]'s best interest for the maintenance of that relationship. However, we do not find them to be relevant at the present time since the parent-child relationship is yet to be created.

*Id.* at 3-4.

We conclude that the trial court erred in denying Father's petition for modification without examining the Section 5328(a) best interest factors. In his modification petition, Father specifically requested additional phone and video contact with Child and sought to remove Mother's fiancé as Child's legal guardian. The court is required to consider whether these proposed modifications are in Child's best interests under the Section 5328(a) factors. The mere fact that Father is currently incarcerated does not obviate the court's responsibility to do so. *See S.T.*, 192 A.3d at 1166 (finding incarcerated parent's request for contact with child must be assessed under 5328(a) factors). Thus, we vacate the trial court's order and remand for the court to

issue a new order and accompanying opinion that considers the required factors within 45 days.

* * *

In his third issue, Father asserts that Mother failed to comply with the relocation procedure outlined in 23 Pa.C.S. § 5337(a) when she relocated to Allegheny County in November 2024. Father's Br. at 14. He asserts that the trial court erred in failing to address the relocation factors during the custody hearing and erred in denying his petition for injunctive relief without any discussion of the relocation factors. *Id.* at 13-14.

This issue pertains to the order that the trial court issued on October 29, 2025 denying Father's "Petition for Injunctive Relief" which is not before us on appeal. While we cannot, therefore, review the procedural aspects of Mother's disregard for the relocation statute in this case, we must nevertheless address the applicability of the relocation factors to the trial court's consideration of the child's best-interest.

Typically, the trial court should hold an expedited full hearing before relocation occurs, with the relocating party bearing the burden of establishing that the relocation will serve the child's best interests based upon the ten factors listed in Section 5337(h). *See* 23 Pa.C.S. § 5337(g), (h), (i)(1). Although Section 5337(l) precludes a trial court from conferring a presumption in favor of a party who relocates without permission, the trial court must still consider the evidence as it exists in the new location in determining the best interests of the child. *See id.* at 5337(l); *B.K.M. v. J.A.M.*, 50 A.3d 168, 175

(Pa. Super. 2012). Here, it is beyond cavil that Mother moved with Child, her fiancé, and their younger daughter from Lebanon County to Allegheny County without Father's consent or court approval.

However, as noted by the foregoing legal principles, that move does not trigger the relocation provisions unless it impairs the custodial rights of a non-relocating party. While it is doubtful that the move impaired Father's custodial rights, considering his incarceration in a state facility, it is undisputed that the move impaired Paternal Grandfather's newly-revived custody rights—a fact that Mother and the court both acknowledge insofar as the relocation increased Paternal Grandfather's travel time by approximately five hours. *See e.g.,* N.T. Hr'g, 7/8/25, at 33-24, 37.

Thus, to the extent that the trial court awarded Paternal Grandfather some form of physical custody, consideration of the relocation factors is warranted as a component of the best-interest determination. Accordingly, in addition to directing the trial court to consider the best-interest factors listed in Section 5328(a), the court should also apply the relevant relocation factors in Section 5337(h) prior to fashioning a new custody order.

\* \* \*

In his fourth issue, Father argues that the trial court erred in incorporating the prior custody order entered on May 24, 2023 into the October 7, 2025 order that is the basis of this appeal because the orders include contradictory terms regarding his ability to maintain contact with Child. Father's Br. at 15. He contends, "one order, [dated] May 24, 2023,

- 10 -

clearly outlines allowing communication between Child and Father, while the other order, [dated] October 7, 2025, is restricting Father to only postal mail communication." **Id.** (some capitalization altered). This issue is moot insofar as we are now vacating the October 7, 2025 order that includes the purportedly contradictory terms. We, nevertheless, caution the trial court to be alert to potential conflicts if, upon remand, it again elects to incorporate portions of the May 2023 order into the new order and opinion.

\* \* \*

In his fifth and sixth issues, Father argues that the trial court erred in "failing to conduct a risk of harm hearing regarding [Mother's fiancé]" in relation to a PFA petition that Mother filed against her fiancé after the couple moved to Allegheny County. **Id.** at 16. Invoking 23 Pa.C.S. §§ 5329(a) (Consideration of criminal conviction) and 5330 (Consideration of criminal charge), Father asserts, *inter alia*, "the court must consider the criminal conduct and determine that the party does not pose a threat of harm before making any order for custody to that party." **Id.** at 17. We disagree. The filing of a PFA petition is not the same as a criminal charge or conviction and thus, the trial court did not err in declining Father's request for a risk of harm hearing.

Pursuant to Section 5329(a), a trial court is required to consider whether a member of Mother's household has been convicted of, or pled guilty or no contest to, a list of enumerated criminal offenses. **See** 23 Pa.C.S § 5329(a). When applicable, the trial court must "consider such conduct and determine

- 11 -

that the party does not pose a threat of harm to the child before making any order of custody to that party[.]" *Id.* Similarly, in accordance with Section 5330, upon learning of a criminal charge relating to one of the offenses enumerated in Section 5329(a), the trial court is directed to hold a risk of harm hearing to determine "whether the party who is or has been charged with the offense set forth in [Section] 5329(a) poses a risk of physical, emotional, or psychological harm to the child." *Id.* at § 5330(b).

Plainly, Sections 5329 and 5330 relate to criminal convictions and criminal charges, respectively. Here, Mother's fiancé was neither charged nor convicted of a criminal offense, much less an offense enumerated in Section 5329. Indeed, while the conduct that forms the basis of a PFA petition may constitute a criminal offense in some cases, merely being a named respondent in a PFA petition is not in itself criminal and PFA proceedings lack the character and qualities of a criminal action. *Commonwealth v. Bartic*, 303 A.3d 124, 131 (Pa. Super. 2023) ("[A] PFA proceeding is civil in nature. In the simplest of terms, the primary objective of the PFA[ Act] is to prevent abuse and provide a means by which a victim of abuse can seek redress and protection.").

Additionally, the trial court properly considered that Mother filed a PFA petition against her fiancé and concluded that no further action was warranted. Thus, the trial court did not commit legal error or abuse its discretion in rejecting Father's request for a "risk of harm" hearing based on Mother filing a PFA petition against her fiancé.

- 12 -

We, however, highlight that while Father's assertion of trial court error for not ordering a risk of harm hearing is meritless, the facts underlying Mother's PFA petition are likely pertinent to the trial court's assessment of the relevant best-interest factor outlined in Section 5328(a)(2), which expressly implicates PFA orders, and should be considered upon remand. *See* 23 Pa.C.S § 5328(a)(2).

\* \* \*

In sum, we remand this matter for the trial court's consideration of all of the Section 5328 best-interest factors, including the second factor concerning the past and present abuse of a party or household member, as well as the relevant relocation factors listed in Section 5337(h).[5]

Order vacated. Case remanded for the trial court to issue a new order and opinion within 45 days of the issuance of this memorandum opinion. The prothonotary is directed to immediately remand the record to the trial court.

---

[5] We also note with displeasure that the trial court violated the Pennsylvania Rule of Civil Procedure 1915.4(d) by entering its order 71 days after the custody hearing. *See* Pa.R.Civ.P. 1915(d) (requiring court to promptly enter decision within 15 days of trial's conclusion). We emphasize to the trial court the high priority it must place on addressing issues involving children.

Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 06/12/2026